The opinion of the court was delivered by
Tilghman, J.
(after stating the case.) Several errors have been assigned in the opinion of the Court of Common Pleas.
1. “That inasmuch as Campbell’s warrant called for an improvement, without saying when it was made, the title under that *294 warrant could not be carried back farther than its date.” This opinion was in exact conformity to the rule laid down by this court. The point has been decided again and again. In Barnes v. Swift, (2 Serg. & Rawle, 436,) it was said by the court, that “ the rule appeared to be so well founded, that it was time to consider the law as settled.” And in Humes v. M‘Farlane, (4 Serg. & Rawle, 424,) the expressions in the court’s opinion are, that “ the principle has been so well settled, that it ought not now to be disturbed.” It had been settled by my predecessors before I came to the bench, several of whom had held offices under the late proprietaries of Pennsylvania, and were well acquainted with the practice of their land office. No doubt, there have been instances, where the proprietaries did not charge interest from the commencement of the improvement. But in those cases, there may have been circumstances unknown to us. Since the proprietary estate became the property of the commonwealth, the courts of justice have thought it most conducive to the public good, to establish some general and leading principle, which should not be departed from but in extraordinary cases. And although the adhering to these principles, may sometimes lead to a result different from what would have been expei'ienced, had the estate remained in the hands of the proprietaries, yet upon the whole, the system which has been adopted, will produce certainty in the law, and consequently security of property. I do not consider myself at liberty, therefore, to enter into any further discussion of the principle, which the plaintiff in error endeavours to shake. I consider it so firmly established as to have passed into a rule of property; and so let it rest.
2. It is contended, that whatever priority of right might have been acquired by George Dobson’s improvement, was lost by the application entered by his widow, which called for an improvement in the year 1763, without mentioning day or month. This would be hard law indeed. The widow of George Dobson, who acted for her infant children as well as herself, showed every disposition to conduct herself towards the proprietaries with honesty and can-dour. She told them the year in which the improvement was begun, in order that if interest should be exacted in so hard a case, there might be a datum to regulate the calculation. As to the month, or day of the month, it might not be in her power to tell it. And surely, to demand such precise information, would have been undue severity against a widow and orphan whose protector had lost his life in the defence of his country, after being driven from his settlement by the enemy. It was a case indeed, in which I think it probable, the proprietaries would have charged no interest previous to the entry of the application..
3. The third error, is, that the court left it to the jury to decide, whether Dobson’s right of preemption, founded on his improvement, was not lost by the laches of his widow in entering her application. There are cases, where the facts have been so strong, *295 that the court has thought itself justified in deciding laches, as matter of law. But it has been more commonly left to the jury. Here were several circumstances to be taken into consideration. The Indian war — the breaking up of the settlement — the death of the father — the manner of his death, — and the infancy of his children. This variety of facts made the case peculiarly proper for the jury. Perhaps, indeed, those would have been juster cause of complaint if the court had undertaken to decide it.
4. The next error, is the court’s opinion, that the plaintiffs might recover without a survey. The opinion was, that if the plaintiffs or those under whom they made title, had been in possession of the land, and designated the boundaries of their claim, by such marks on the ground as made it notorious, they might recover in ejectment. There was no error in this opinion. There is a distinction between lands lying on the east and west sides of the Allegheny river. Those on the west side, which were taken up by-settlers, might be surveyed on application made by the settler to the deputy surveyor of this district, without payment of any part of the purchase money, or anjr order from the surveyor general. With respect to them, therefore, this court has decided, that it was the duty of the settler to have a survey made, and he could not recover in an ejectment, without it. But the lands on the east side of the river, were taken up on different terms, and as it has been held, that one who has a right of preemption, and has designated his boundaries, may recover without a survey. The very point came before us, in the case of Luck and wife v. Duff, (6 Serg. & Rawle, 189,) and was decided on full consideration.
5. The last point assigned for error, turns upon the 5th section of the limitation act, (26th March, 1785.) “ No person that hath' any claim to the possession of any land, or the preemption thereof,» from the commonwealth, founded on any prior warrant whereon no survey hath been made, or in consequence of any prior settlement,improvement, or occupation, without other title, shall hereafter enter, or bring any action for the recovery thereof, unless he or his ancestors or predecessors have had the quiet and peaceable pos* session of the same within seven years next before such entry, or' bringing such action. Provided, that if any person claiming as aforesaid, hath been forced, or driven away from his possession, by the savages, or by the terror of them, or any other persons, or by any other means except the judicial authority of the state, hath quitted the same, during the late war, then such person and his heir may,» notwithstanding the said seven years be expired, bring his action or make his entry, within five years from the passing of this act.”
I will not say, that the president of the Court of Common Pleas* was accurate in his whole opinion on this statute.- But that is immaterial. It is enough if he was right in saying that the plaintiff’s action was not barred. And in that I think the opinion was correct. The act of assembly was not intended for persons who were/ *296 in possession of the lands claimed by them, at the time it was made; I mean in actual possession. A right of preemption,- accompanied with actual possession, has always been treated by the legislature with great respect. But what was meant to be struck at, by this act, was that vague, indefinite title which depended on warrant, or application, without survey, or possession; or a settlement, or improvement, which had been deserted, although there had once been some kind of possession under it. Now from the evidence placed on the record, it appears, that long before the passing of the act, as well as at the time of its passing, the Dobson family were in actual possession under their improvement right and application. Their case, therefore, was not affected by the act of limitation.
There were some other errors assigned, but not insisted on in the argument.
I am of opinion on the whole, that the judgment should be affirmed.
Judgment affirmed.'