VAN WYCK v. ASPINWALL and others.

The trustees of the College of Pharmacy in New-York appointed the defendants a committee to investigate complaints in respect to the importation of spurious and adulterated drugs. The defendants made a written report intended to be presented, and which was presented to the secretary of the treasury, in which they charged the plaintiff, who was examiner and

Van Wyck *v.* Aspinwall.

inspector of drugs, with gross violation of his official duty; *Held*, that such report, having been made in good faith and upon probable cause, for the purpose of arresting the sale and use of spurious and adulterated medicines, was a privileged communication.

A communication, which would otherwise be actionable, is privileged if made in good faith, upon a matter involving an interest or duty of the party making it, though such duty be not strictly legal but of imperfect obligation, to a person having a corresponding interest or duty.

.APPEAL from the Superior Court of New-York city. The complaint was for a libel upon the plaintiff an examiner and inspector of drugs for the port of New-York, under the appointment of the secretary of the treasury. The defendants answered that they were trustees of the College of Pharmacy in the city of New-York, which was incorporated among other things, as declared by its charter, for the purpose of cultivating and improving pharmacy, and of making known the best modes of preparing medicines and their compounds, with a view to the public benefit. Complaints were made to the board of trustees that spurious and adulterated drugs and medicines had been imported into New-York, contrary to law. Thereupon the board of trustees appointed the defendants a committee to investigate such complaints, and report the result to the board. They proceeded to make such investigation, and jointly made a report thereof in writing to the board in order that the same might be presented to the secretary of the treasury, to whom it belonged to enforce the act of congress for preventing the importation of spurious and adulterated drugs and medicines, and who had the power to appoint and remove the examiner and inspector of drugs for the port of New-York. The report contained the statement charged as libelous, which narrated several instances in which impure and adulterated drugs had been passed through the custom house upon the certificate of the plaintiff to their genuineness and good quality. The answer further averred that said report was forwarded to the secretary of the treasury for the purpose of informing him of the matters therein stated, and of pro-

curing the proper enforcement of the act of congress, and preventing the importation and sale of spurious drugs; that it was forwarded with reasonable cause, in good faith, and that the defendants were moved solely by a conscientious desire to discharge their duties to the public, to prevent the unlawful importation, sale and public use of adulterated medicines, &c., and without malice or any unlawful attempt to defame or injure the plaintiff or his profession, office or employment. They denied any other publication except as above stated, and averred that they, at the time thereof, believed and at the time of answering still believed their statements in the report to be true.

The plaintiff demurred to the answer. His demurrer was overruled, and judgment rendered for the defendants, with liberty to the plaintiff to reply. On appeal this judgment was affirmed by the Superior Court at general term. The plaintiff appealed to this court.

*Charles N. Black*, for the appellant.

*Nicholas Hill*, for the respondents.

HARRIS, J. The publication of which the plaintiff complains was made by the defendants as a committee of the board of trustees of the College of Pharmacy, in the city of New-York. The subject matter of the publication was pertinent to the object for which the committee had been appointed. The investigation which the defendants had been directed to make, and the result of which is contained in the report, was within the purposes for which the College of Pharmacy had been incorporated, and involved matters of public interest. Complaints had been made to the trustees of the college that spurious and adulterated drugs and medicines had been imported into the city of New-York, contrary to law. It was not merely proper, it was commendable, for the trustees to raise a committee to ascertain

Van Wyck v. Aspinwall.

whether or not these complaints were well founded. In the discharge of this duty the defendants had a right, so long as they acted in good faith, to report to the board any facts which might come to their knowledge, even though the report might contain criminatory matter. Though it might otherwise have been actionable, being made in the performance of an official duty, it was a privileged communication.

No action can be sustained upon such a publication without proof that it was made maliciously and without probable cause. The occasion of the publication repels the inference of malice, which but for the privilege would have been drawn from its injurious character. (2 *Greenl. Ev.*, § 421; *Cook* v. *Hill*, 3 *Sandf.*, 341; *White* v. *Nichols*, 3 *How. U. S. R.*, 266; *Vanderzee* v. *McGregor*, 12 *Wend.*, 545; *Howard* v. *Thompson*, 21 *id.*, 319; *Fairman* v. *Ives*, 5 *Barn. & Ald.*, 642; *Harrison* v. *Bush*, 32 *Eng. L. and Eq. R.*, 173.) In the latter case, Lord CAMPBELL said that during the argument, a legal canon had been propounded for the guidance of the court which they were willing to adopt, as they thought it was supported by the principles and authorities upon which the doctrine of privileged communication rests. It was that " a communication made, *bona fide*, upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contain criminatory matter which, without this privilege would be slanderous and actionable." He added that "*duty*" in the proposed canon could not be confined to legal duties, but must include moral and social duties of imperfect obligation.

No one can doubt, I think, that the publication in question was made in the performance of such a duty. It was, moreover, made in good faith, and upon reasonable cause. The answer alleges, and the demurrer admits the allegation that the defendants were moved solely by a conscientious desire to discharge their duties to the public and to prevent

the unlawful importation, sale and public use of spurious and adulterated drugs and medicines. Such an answer, uncontroverted, constitutes a complete defence to the action.

The judgment of the Superior Court, overruling the demurrer, was right and should be affirmed.

All the judges concurring,

Judgment affirmed.