IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

## EASTERN DIVISION.

---

### KNOXVILLE, SEPTEMBER TERM, 1902.

---

\*COOLEY *v.* GALYON.

### (*Knoxville.* September Term, 1902.)

1. **LIBEL AND SLANDER.** **Privileged communications—Defense of, how made.**

   In an action for libel and slander predicated upon words uttered and testimony given by a witness in the course of a judicial investigation, a defense that the words were spoken without malice as responsive answers to pertinent questions propounded to the witness, may be made by special plea or under the general issue. (*Post, pp.* 4-6.)

   Case cited: Shadden *v.* McElwee, 86 Tenn., 148.

2. **DEMURRER TO EVIDENCE.** **Right to, not lost by cross-examination of plaintiff's witness—Rule stated.**

   It is well settled in this State, that cross examination is only limited by the relevancy and competency of the evidence sought to be elicited and introduced, and the defendant, by exercising this right, is not offering original evidence and is not precluded from demurring to the evidence. (*Post, pp.* 7-8.)

   Case cited and approved: Sands *v.* Railway Co., 108 Tenn., 1.

---

\*As to privilege of defamatory testimony, see note to Cooper v. Phipps (Or.), 22 L. R. A., 836.

Cooley *v.* Galyon.

. **SAME.   Same.   Rule applied.   Case in judgment.**

Where plaintiff, upon the trial of an action for libel and slander
based on words uttered by defendant in the course of his
examination as a witness in a judicial proceeding before
a master in chancery, has examined in chief a witness, by
whom material parts of the record in the chancery proceed-
ings are identified and proven, the defendant may fully
cross-examine said witness and by him identify and prove
other parts of said record, not offered by plaintiff, but which
are pertinent to the issues, and such evidence so elicited on
cross-examination is not original evidence and does not bar
defendant from demurring to the evidence upon which plain-
tiff rests his case.   (*Post, pp.* 7-8, 14.)

4. **LIBEL AND SLANDER.   Defamatory words to the preju-
dice of occupation or business actionable per se.**

It is well settled in this State that defamatory words falsely
spoken or written of one, which prejudice him in his busi-
ness or occupation, are actionable without proof of special
damage.   (*Post, pp.* 8-9.)

Cases cited and approved:   Bank *v.* Bowdre, 92 Tenn., 723;
Mattson *v.* Albert, 97 Tenn., 232.

5. **SAME.   Judicial proceedings.   Words uttered in, privil-
eged when.**

Words otherwise actionable, if spoken by a witness in the
course of a judicial proceeding and relevant and pertinent
to the issue or responsive to questions propounded, are ab-
solutely privileged and can not be made the basis of an
action for libel or slander although they were spoken with
malice.   (*Post, pp.* 9-14.)

Cases cited and approved:   Lea *v.* White, 4 Sneed, 113-5;
Cooper *v.* Phipps, 33 Pac., 986, 22 L. R. A., 839; Hoar *v.*
Wood, 3 Metc., (Mass.), 193; Gardemal *v.* McWilliams (La.),
9 South., 108, 26 Am. St. Rep., 197.

Case reviewed and distinguished:   Shadden *v.* McElwee, 86
Tenn., 146.

6. **SAME.   Same.   All pertinent testimony privileged.**

The protection which the law throws around the witness testi-
fying in a judicial proceeding in respect to pertinent and
relevant matters or in response to questions propounded, is

Cooley *v.* Galyon.

not confined to parties to such proceeding or to words spoken concerning parties thereto, but extends to their testimony in relation to strangers to the litigation. (*Post, pp.* 12-14.)

Citing:   Heard on Libel and Slander, secs. 90, 103, 110; Newell Defam., p. 423; Fisk Soniat, 33 La. Ann., 1400; Vinas *v.* Insurance Co., 33 La. Ann., 1265.

7.   **SAME.** Same. Case in judgment.

Under an order of reference to ascertain the damages accruing on account of delay, in building a house, caused by an injunction, it was shown that the original contractor demanded a certain sum in addition to the contract price to cover the increase in cost of labor and material consequent upon the delay and that plaintiff (herein) had offered to construct the building for the original price; thereupon the reliability and financial responsibility of plaintiff were questioned, and defendant being examined as a witness, touching these matters and responding to proper questions, testified in substance that plaintiff was neither reliable as a contractor nor of good financial standing. HELD, That the question of the reliability of plaintiff as a contractor and his financial responsibility were matters pertinent to the investigation before the master and the testimony of defendant being fairly responsive, no action can be based thereon. (*Post, pp.* 7, 14-16.)

---

FROM KNOX.

---

Appeal in error from the Circuit Court of Knox County.   JOSEPH W. SNEED, Judge.

GREEN & SHIELDS, for Cooley.

TEMPLETON, CARLOCK & TEMPLETON, for Galyon.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

This is an action to recover damages for alleged slanderous words spoken by Cooley, the plaintiff in error, of and concerning Galyon, the defendant in error, while being examined as a witness before the master upon a reference to ascertain damages resulting from the wrongful suing out of an injunction issued in the case of Eckle *et al.* against the Florence Crittendon Home, lately pending in the chancery court of Knox county. Galyon and Cooley were both contractors and builders residing in Knoxville, and neither was a party to the chancery cause.

The declaration contains two counts—one in slander and one in libel—both predicated upon the same words, which are hereinafter set out, in stating the averments of a special plea filed by the defendant. It is averred that the words were falsely and maliciously spoken and published of and concerning the plaintiff, with respect to his occupation and business as a builder and contractor, to his damage, five thousand dollars.

The defendant filed a plea of not guilty, and a special plea in which he says that he uttered the language complained of while being examined as a witness in a suit pending in the chancery court of Knox county, styled "G. B. Eckle *et al.* v. Florence Crittendon Home," in answer to questions put to him by counsel in the said cause; that the bill in said cause was filed to enjoin the Florence Crittendon Home from completing a house then in course of construction,

Cooley v. Galyon.

and designed as a home for fallen women; that an injunction was issued in said cause, and remained in force until the cause was heard and the bill dismissed; that upon a reference to the master to hear proof, and report what damages, if any, the Florence Crittendon Home had sustained by reason of the wrongful suing out of said injunction, it was proven that at the time the injunction was issued, the Florence Crittendon Home had awarded the contract for the building of said house to Thomas & Turner, contractors, for the contract price of $2,497, and that after the dissolution of the injunction they refused to carry out the contract, because of an advance in wages and material, unless the Florence Crittendon Home would pay them the additional sum of $303.90; that the complainants, Eckle and others, claimed that Galyon, who was alleged to be a reliable contractor, was then offering to do the building for the original contract price of $2,497, and that therefore the defendant was not damaged by the wrongful suing out of the injunction; that upon this reference the defendant, who was in no way interested in or connected with said litigation, was called and sworn as a witness in behalf of the Florence Crittendon Home, to prove the advance in the price of labor and material, and on cross-examination by the complainant's solicitors, he was asked questions, and made answers thereto, as follows: "Q. Is Mr. Galyon a reliable contractor? A. I know Mr.

Galyon hasn't paid us for some bills that he bought last year. We would not sell him lumber to-day without cash. Q. He is considered reliable with respect to his work, is he not? A. That depends on how broad a sweep you give the word 'reliable.' If you mean he faithfully performs all his contracts in every particular, I must say he is not reliable. In other words, I will be a little more explicit. He will complete a contract, and put in an inferior grade of material than what is called for in the specifications;" that these answers had reference to the said inquiry, and were fairly responsive to the questions asked him by counsel; and that they were absolutely privileged under the law. He denies that he uttered the words maliciously. While this defense could have been made under the general issue, it could also be made by special plea. *Shadden* v. *McElwee*, 86 Tenn., 148 (5 S. W., 602; 61 Am. St. Rep., 821).

Issue was joined, and the case was tried by the circuit judge and a jury, and upon the trial the plaintiff introduced the solicitor of the complainants in the cause of Eckle and others against the Florence Crittendon Home, as a witness in his behalf, and had him identify the original bill, the answer, the decree denying the complainants relief, and ordering the reference to the master to ascertain the damages sustained by the defendant by reason of the wrongful issuance of the injunction, and

Cooley v. Galyon.

the deposition given by defendant, Cooley, in the chancery cause; the original papers being used by consent, all of which were then read in evidence by the plaintiff.

Upon cross-examination the witness identified the depositions of other witnesses taken in the cause, the report of the master allowing damages to the defendant in that cause, and the decree confirming the same, which were then read to the jury by defendant's attorney. Other evidence was introduced by the plaintiff tending to prove that the defendant gave the deposition read, and entertained malice toward the plaintiff.

The proof introduced by the plaintiff sustained the averments of the special plea, and upon the conclusion of plaintiff's evidence the defendant filed a demurrer, in proper form, thereto, which was overruled by the court, and the damages of the plaintiff assessed by the jury at five hundred dollars, and judgment given therefor; and the defendant has brought the case before this court, and assigns error.

For the plaintiff it is said that the defendant, by calling out and reading in evidence those portions of the record in the chancery cause which the plaintiff had not offered, introduced original evidence in his behalf, and lost his right to demur to the evidence of the plaintiff, and that for this reason the action of the court in overruling the demurrer was correct, regardless of other questions. It is true that,

Cooley v. Galyon.

if a defendant introduce any original evidence in his
behalf, he can not demur to the evidence of the plain-
tiff; but can it be said that the evidence
elicited by the defendant in this case was orig-
inal evidence? Clearly not. The plaintiff had
introduced part of the record in the chancery
cause, and it was perfectly competent for the de-
fendant to call for the remainder of it. It
would have been the better practice to have
required the plaintiff to read the entire record;
but, having failed to do so, the defendant had the
right to call for the rest of it, and examine the wit-
ness then upon the stand in relation to it. This was
legitimate cross-examination, in the strictest sense,
as the evidence brought out related to and was ger-
mane to that elicited in the examination in chief.
But whether germane or not, the defendant had the
right to bring out upon cross-examination any mat-
ter pertinent to the issue; the rule in Tennessee being
that the cross-examination is only limited by rele-
vancy and competency of the evidence sought to be
introduced, and the defendant, by exercising this
right, is not precluded from demurring to the evi-
dence. This question was fully discussed in the case
of *Sands* v. *Railway Co.,* 108 Tenn., 1 (64 S. W.,
478), and the rule there stated as here applied.

The question upon which this case must be de-
termined is whether the language imputed to the
defendant is actionable. It is well settled that de-

Cooley v. Galyon.

famatory words falsely spoken or written of one, which prejudice him in his business or occupation, are actionable, without proof of special damage; and, therefore, the publication of the words imputed to the defendant, other questions out of the way, would entitle plaintiff to recover. *Bank* v. *Bowdre,* 92 Tenn., 723 (23 S. W., 131); *Mattson* v. *Albert,* 97 Tenn., 232 (36 S. W., 1090). The defendant, however, insists that the words here spoken and published are absolutely privileged, on account of the occasion when done, regardless of the presence of malice; the only inquiry allowed being whether they were pertinent to the issues involved in the cause in which the defendant was examined as a witness, and fairly responsive to the questions propounded to him by counsel; while for the plaintiff it is said that the words are only qualifiedly or conditionally privileged, and, malice appearing, they are actionable. The question is, therefore, presented whether the answers of the defendant in question are absolutely or only conditionally privileged.

"By an absolutely privileged communication," says Mr. Townshend in his work on Slander and Libel, "is not to be understood a publication for which the publisher is in no wise responsible; but it means a publication in respect of which, by reason of the occasion upon which it is made, no remedy can be had in a civil action or libel. A conditionally privileged communication is a publication made on an occasion

which furnishes a *prima facie* legal excuse for the making of it, and which is privileged unless some additional fact is shown which so alters the character of the occasion as to prevent its furnishing a legal excuse." Townsh. Sland. & L., p. 248, sec. 202, cited and approved in *Ruohs* v. *Backer,* 6 Heisk., 405 (19 Am. Rep., 598). In Odgers, Lib. & Sland., p. 191, it is said: "A witness in the box is absolutely privileged in answering all the questions asked him by counsel on either side; and, even if he volunteers an observation (a practice much to be discouraged), still, if it has reference to the matter in issue, or fairly arises out of any question asked him by counsel, though only going to his credit, such observation will also be privileged. But a remark made by a witness in the box, wholly irrelevant to the matter of inquiry, uncalled for by any question of counsel, and introduced by the witness maliciously, for his own purposes, would not be privileged, and would also probably be a contempt of court." This statement of the law is quoted and approved by this court in the case of *Shadden* v. *McElwee,* 86 Tenn., 150 (5 S. W., 602; 61 Am. St. Rep., 821). In the case of *Lea* v. *White,* 4 Sneed, 113, 115, it is said: "There is a class of cases which are absolutely privileged, and depend in no respect for their protection upon their *bona fides.* The occasion is an absolute privilege, and the only questions are, whether the occasion existed, and whether the matter complained

Cooley v. Galyon.

of was pertinent to the occasion.    In this class are
embraced judicial proceedings.    The proceedings
connected with the judicature of the country are so
important to the public good that the law holds that
nothing which may be therein said with probable
cause, whether with or without malice, can be slan-
der, and, in like manner, that nothing written with
probable cause under the sanction of such occasion
can be libel.    The pertinency of the matter to the
occasion is that which is meant by 'probable cause,'
and probable cause is, in this class of absolutely priv-
ileged communications, what *'bona fides'* is to the
class of conditionally privileged communications,
which, we have seen, are protected unless there is
malice in fact."

In the case of *Cooper* v. *Phipps* (decided by the
supreme court of Oregon), 33 Pac., 986 (22 L. R.
A., 839), the court said:   "While there is some con-
flict in the adjudged cases as to whether witnesses
are absolutely exempt from liability to an action for
defamatory words uttered or published in the course
of judicial proceedings, it is agreed by all the
authorities that they are presumptively so; and, be-
fore a witness can be held liable in a civil action,
this presumption must be overcome by showing, af-
firmatively that such statements were not only false
and malicious, but that they were not pertinent to
the issues, and not in response to questions asked
by counsel."

In the same case the court further said: "In this country many, and perhaps a majority, of the courts, have refused to adopt an absolute and unqualified privilege of a witness, as laid down by the English courts; but it is agreed that a witness is absolutely privileged as to everything said by him having relation or reference to the subject of inquiry before the court, or in response to questions asked by counsel, and presumptively so as to all his statements." 33 Pac., 986 (22 L. R. A., 840).

In the case of *Hoar* v. *Wood,* 3 Metc. (Mass.), 193, the court said: "We take the rule to be well settled by the authorities that words spoken in the course of judicial proceedings, though they are such as impute crime to another, and, therefore, if spoken elsewhere, would import malice, and be actionable in themselves, are not actionable if they are applicable and pertinent to the subject of inquiry. The question, therefore, in such case, is not whether the words spoken were true, not whether they are actionable in themselves, but whether they were spoken in the course of judicial proceedings, and whether they were relative and pertinent to the cause or subject of inquiry."

In the case of *Gardemal* v. *McWilliams* (La.), 9 South., 108 (26 Am. St. Rep., 197), it is said: "Certain communications are absolutely privileged, and no person is liable, either civilly or criminally, in respect of anything published by him in the course

Cooley v. Galyon.

of his duty in any judicial proceeding.  This privilege extends to parties, counsel, witnesses, jurors, and judges in a judicial proceeding, to proceedings in legislative bodies, and to all who, in the discharge of public duty, or the honest pursuit of private right, are compelled to take part in the administration of justice or in legislation," citing Heard, Lib. & Sland., sections 90, 103, 110; Newell, Defam., p. 423, sections 26, 27; *Fisk* v. *Soniat*, 33 La. Ann., 1400; *Vinas* v. *Insurance Co.,* 33 La. Ann., 1265.

The case of *Shadden* v. *McElwee,* 86 Tenn., 146 (5 S. W., 602; 61 Am. St. Rep., 821), is relied upon as supporting the position of the plaintiff, but it does not do so.  That case was before this court upon the demurrer interposed by the defendant to the replication of the plaintiff to a plea averring that the words upon which the action was predicated were uttered while the defendant was being examined as a witness in a certain suit, in response to questions propounded to him, and that his answers were responsive and privileged, replying that the words were not uttered in response to questions asked defendant while on the witness stand, and that they were not pertinent to the issues in said suit, but were voluntarily injected into his testimony, and falsely and maliciously spoken for the purpose of injuring the plaintiff, and the demurrer was properly overruled. But it is there expressly held, upon the authority of *Lea* v. *White* and Odgers, Sland. & L., above cited,

which are quoted and approved in the opinion of the court, that when the communications of a witness are fairly responsive to the questions propounded, or pertinent to the inquiry, they are absolutely privileged, although he may have entertained malice toward the plaintiff. It is immaterial' that neither the plaintiff nor the defendant were parties to the cause in which the defendant was called to testify. The majority of witnesses are not parties to the cases in which they are examined, and facts in relation to other strangers to the litigation often become the subject of necessary inquiry. If the privilege was confined to parties, it would be reduced to narrow limits, and the proper administration of justice would be greatly embarrassed and made difficult.

Applying these principles to this case, the question is not whether the words spoken by the defendant were false and malicious, but were they spoken in a judicial proceeding, and were they relevant and pertinent to the subject of inquiry in that proceeding, or responsive to questions propounded to the defendant by counsel while being examined therein as a witness? If they were, they are absolutely privileged, and the plaintiff's action must fail.

That the words were spoken in the course of a judicial proceeding is conceded; and the only question that remains to be determined is, were the answers of the witness pertinent to the inquiry, or responsive to the questions

Cooley v. Galyon.

asked by the counsel? The issue being tried in the chancery cause, in relation to which the defendant was examined as a witness for the Florence Crittendon Home, was what damages it had sustained by being delayed in building a house by the injunction issued against it; and defendant was called to testify as to the difference in the cost of material and construction at the time the injunction was issued and when the bill was dismissed, as bearing upon this issue. The plaintiff, Galyon, had offered to build the house for the same price for which the defendant had contracted it when enjoined, and the question arose whether he was a reliable contractor, and would and could comply with a contract to do the building if it were let to him; and, with a view of proving this, the witness was cross-examined by the solicitor for the complainants, and made the answers of which the plaintiff complains.

These answers were clearly pertinent to the investigation. If Mr. Galyon was a reliable contractor, his proposition to build the house tended to prove that the defendant had sustained no loss; and, if he was unreliable, the effect of the proposition as evidence was weakened. The answers were also fairly, and evidently intended to be directly, responsive to the questions propounded to the witness. If the plaintiff did not pay for the material he used in building, or did not use the char-

acter of material called for in his contract, he was not a reliable contractor.

We are of the opinion that the words spoken by the defendant of the plaintiff were, on account of the occasion, absolutely privileged, and that no action can be maintained upon them. There is therefore no evidence to sustain a verdict against the defendant, and the demurrer to the plaintiff's evidence should have been allowed.

The judgment of the circuit court is reversed, the demurrer sustained, and the plaintiff's suit dismissed.